## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **UNITED STATES OF AMERICA,** | * | |
| | * | **CRIM. NO. MJM-12-92** |
| **v.** | * | |
| | * | ██████████ |
| **PETER BLAKE,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

This matter is before the Court on defendant Peter Blake's ("Defendant") motion for compassionate release. No hearing is necessary to resolve the motion. For the reasons stated below, the motion is granted.

## I.    BACKGROUND

On May 1, 2013, Defendant received a total sentence of 240 months of imprisonment and three years of supervised release for conspiracy to commit murder and kidnapping in aid of racketeering and aggravated re-entry after deportation. ECF No. 11.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



On April 18, 2012, Defendant pleaded guilty to conspiracy to commit murder in aid of racketeering activity, in violation of 18 U.S.C. § 1959(a)(5), and re-entry into the United States after deportation following conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a). ECF No. 6 at 1. Defendant's plea agreement waived the parties' right to appeal any sentence between 108 and 135 months of imprisonment, and the government agreed to recommend to immigration officials that Defendant be granted a deferral of deportation upon his release. ECF No. 6 at 3–5.

Defendant stipulated to the following facts in his plea agreement:

> The Defendant was an associate of Jean T. Brown, a Jamaican drug dealer who ran a large-scale marijuana trafficking operation in Baltimore, Maryland from at least 2006 through 2010. Brown arranged for large quantities of marijuana to be transported from Arizona to Baltimore in trucks owned by her trucking company and driven by her employees. Among other things, the Defendant assisted in off-loading the marijuana from the trucks and selling the marijuana in the Baltimore area.

> The Defendant was aware that Brown transported as much as 1,000 pounds of marijuana at a time, and did so once or twice a month. He was also aware that she sold the marijuana in the Baltimore area for $1,000 per pound, thus grossing between $1 million and $2 million a month in proceeds. The Defendant was also aware that Brown transported approximately half of her gross proceeds back to Arizona to pay her Mexican suppliers by concealing large quantities of currency in concealed compartments in vehicles, and that she either kept the remainder of the money in the Baltimore area, where it was concealed in

various places, or caused it to be transported to Jamaica by couriers who were part of her organization.

On the evening of December 16, 2009, Jean Brown came to the Defendant's residence and told him that someone had stolen money from her, and that he would be surprised to learn who it was. Brown asked the Defendant to accompany her and Carl Smith to the location where the person in question was being held. The Defendant agreed to do so, and brought a firearm with him.

Brown and Smith drove the Defendant to an apartment in the White Marsh area of Baltimore County. On the way, Brown told the Defendant that the person who had stolen the money was Michael Knight, who the Defendant knew to be one of the employees of Brown's organization. Brown explained that she had entrusted Knight with $1 million in drug proceeds but that more than $200,000 of that money was missing. Brown told the Defendant that when she discovered that the money was missing she beat Knight about the face with her cell phone. In fact, the Defendant observed that Brown had blood on her clothing at this time.

Upon arrival at the White Marsh apartment, the Defendant observed that Michael Knight was bound with a cord and was being watched by a person known to the Defendant only as "Journey." The Defendant observed that Knight had been badly beaten, and that one eye was displaced from its socket. The Defendant and Smith then returned to the apartment shared by the Defendant and Hubert "Doc" Downer to retrieve Downer. Smith, Downer and the Defendant returned to the White Marsh apartment.

With Brown, Smith and Journey present, the Defendant and Downer, on Brown's instructions, attempted to get Michael Knight to admit that he had taken Brown's money and to disclose its location. These attempts included a threat to shoot Knight. When the Defendant and Downer were unsuccessful, Brown offered to pay the Defendant and Downer to kill Knight. Acting on Brown's instructions, and upon her promise to pay them if they did as she ordered, the Defendant and Downer placed Knight face down in the bathtub in the apartment whereupon the Defendant and Downer stabbed him Knight [*sic*] with knives.

After Knight died, Brown told the Defendant and Downer that she would pay them $100,000 for the murder and for disposing of the body. Over the next three days, Brown supervised the dismembering of Knight's body by the Defendant, Downer and Journey, paying for the saws and other

> materials needed to do so, and instructing them on the disposal
> of the body in two or more dumpsters in the Baltimore area.

ECF No. 6 at 9–10.



Judge William D. Quarles ultimately imposed a total prison sentence of 240 months, followed by three years of supervised release, stating that "the sentence is sufficient but not greater than necessary to reflect the seriousness of all of the conduct, provide just punishment and adequate deterrence, promote respect for the law, and protect the public from further crimes of the Defendant." ECF No. 40-8 at 20–21.



Defendant, then representing himself, moved for compassionate release on August 17, 2020. ECF No. 21. The Court advised Defendant to file a request for compassionate release with the warden of his institution pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 22. Then, upon Defendant's request, the Court sent Defendant's docket sheet to the warden of his institution so that the warden could share it with Defendant. ECF No. 25 at 1, 2. Defendant wrote to the warden of FCI Milan, the institution where he was incarcerated, requesting compassionate release on November 3, 2023. ECF No. 40-7.

Defendant's attorney filed an amended motion for compassionate release on April 24, 2024. ECF No. 40. The motion is accompanied by records related to Defendant's medical history, Exhibits 1A through 1E. ECF Nos. 40-1, 40-2, 40-3, 40-4, 40-5, 40-6, 42. Counsel also attached a copy of the request for compassionate release Defendant directed to the warden of his institution, ECF No. 40-7; a transcript of Defendant's sentencing hearing, ECF No. 40-8; and a copy of Defendant's plea agreement, ECF No. 40-9. The government responded in opposition to the motion on June 11, 2024. ECF No. 47. On June 25, 2024, through counsel, Defendant filed his reply to the government's opposition in which he attached an email with updated information regarding Defendant's dental health. ECF Nos. 49, 49-1. The government filed a surreply with the Court's leave. ECF No. 53. Finally, Defendant provided an email he

received from dental staff at FCI Milan regarding wait times for dental care, ECF No. 55-1, and a copy of an x-ray taken of Defendant's mouth, ECF No. 55-2.

Defendant is now 68 years of age, has stage two kidney disease, diabetes, vision loss due to diabetes (which has worsened from "pre-diabetic"), deteriorating vision due to diabetes, severe tooth loss, chronic hypertension, gout, coronary atherosclerosis, high cholesterol, and an increased risk from pathogens like COVID-19. ECF Nos. 40-1 through 40-5, 42, 49-1, 55-1, 55-2. Defendant asserts that FCI Milan does not have a diabetic meal plan and that he has lost thirty-five pounds, which is attributable to his diabetes and tooth loss. ECF No. 49 at 3; ECF No. 49-1 at 1. Defendant also asserts that he must eat soft foods, which are almost always high in sugar and saturated fats. ECF 49 at 3. Defendant described the state of his dental health in a message to counsel:

> Mr. [W]hite, when they took out my wisdom tooth, [I] ask[ed] the dental lady Ms. Moore what I'm going to do about eating b/c [I] only have one tooth and two stubs. Her reply was "There is nothing that she can do. So [I] will have to stick it out and eat what [I] can eat b/c we don't have a dentist and [I] must be put on a waiting list[.]" It's been over a year and [I] have not heard back from the Dentist so [I] have to make one tooth and two stubs do all the chewing for me and a lot of time b/c [I] have to stuff my mouth with food so [I] can chew. A lot of time [I] will bite my lips while chewing.

ECF No. 49-1 at 3. A filing made on February 25, 2025, contains an email from prison dental care staff explaining that as of December 30, 2024, prisoners on the routine dental list as of 2019 were currently being seen by dentists. ECF Nos. 55, 55-1. Defendant was on the list as of July 6, 2023. ECF No. 55-1. It also contained a copy of an x-ray of Defendant's mouth in which it appears that Defendant is missing about half of his top teeth and almost all of his bottom teeth. *See* ECF No. 55–2.

Defendant remains incarcerated at FCI Milan today and is scheduled for release on November 27, 2027. *See* ECF No. 40 at 6; Bureau of Prisons ("BOP") Inmate Locator, available at https://www.bop.gov/inmateloc/ (last visited, July 20, 2026).

**II.    STANDARD OF REVIEW**

Usually, a court may not "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024). There are, however, "a few narrow exceptions" to this "rule of finality." *Freeman v. United States*, 564 U.S. 522, 526 (2011). A provision of the Sentencing Reform Act of 1984, "commonly known as the 'compassionate release exception,'" is one such example. 18 U.S.C. § 3582(c)(1)(A)(i); *see also Moody*, 115 F.4th at 310. "A compassionate release … is an extraordinarily rare event." *United States v. Mangarella*, No. 306CR151FDWDCK3, 2020 WL 1291835, at *2 (W.D.N.C. Mar. 16, 2020) (quoting *White v. United States,* 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019)). Under this exception, a court may reduce a sentence if "extraordinary and compelling reasons warrant such a reduction," or "the defendant is at least 70 years of age, has served at least 30 years in prison . . . ," and "a determination has been made . . . that the defendant is not a danger to the safety or any other person or the community." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022). A sentence modification must be "consistent with applicable policy statements issued by the Sentencing Commission" and warranted under the 18 U.S.C. § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Crawley*, 140 F.4th 165, 169 (4th Cir. 2025). In evaluating the § 3553(a) factors, courts "enjoy the discretion to give additional weight to any one [of the § 3553(a)] factor[s] so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see also United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). District courts have broad discretion in conducting this analysis. *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

For a court to consider a compassionate release motion filed by a defendant,[1] the

---

[1] In 2018, Congress "broadened" 18 U.S.C. § 3582(c) relief with the enactment of the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194; 18 U.S.C. § 3582(c)(1)(A), which expanded access to compassionate release by allowing prisoners themselves to file such motions, rather than just the Bureau

defendant must first "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or show that more than thirty days have passed "from the receipt of such a request by the warden of the defendant's facility[.]" 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022). A court does not have "to decide between immediate release or no reduction at all." *United States v. Braxton*, Crim. No. JKB-09-478, 2020 WL 4748536, at *5 (D. Md. Aug. 17, 2020).

### III.    ANALYSIS

In 2023, the United States Sentencing Commission amended the policy statement in U.S.S.G. § 1B1.13 to apply to motions filed by prisoners, clarifying the "contours of 'extraordinary and compelling' reasons" for release in such instances. *Davis*, 99 F.4th at 654, 658; *see also* U.S.S.G. § 1B1.13(b). Section 1B1.13(b) lists six categories of "extraordinary and compelling" circumstances. U.S.S.G. § 1B1.13(b).

Section 1B1.13(b)(2) is the most relevant provision in the instant case. It provides that compassionate release can be granted based on the age of the defendant when "[t]he defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13(b)(2). This policy statement is applicable to motions filed before it was enacted. *Crawley*, 140 F.4th 165 at 170. Importantly, § 1B1.13(d) provides that rehabilitation of the defendant while serving the sentence, though not dispositive, may be considered with other factors to determine whether compassionate release is warranted. U.S.S.G. § 1B1.13(d).

Defendant argues that his circumstances are "extraordinary and compelling" as contemplated by U.S.S.G. § 1B1.13(b)(2) because, at the time the motion was filed, he was 66

---

of Prisons on behalf of inmates. *See United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023).

years old, had served 13 years of his sentence, and "is experiencing a serious deterioration in physical or mental health because of the aging process." ECF No. 40 at 5, 7; U.S.S.G. § 1B1.13(b)(2). Defendant asserts that his diabetes, dental health, vision loss, stage two kidney disease, hypertension, atherosclerosis, gout, gastritis, neck and shoulder pain, and susceptibility to illnesses like COVID-19 support relief under § 1B1.13(b)(2). ECF Nos. 40 at 7–8; ECF No. 49 at 6–7. He also argues that § 1B1.13(b)(1)(B)(iii) may provide him with an alternative avenue for relief. ECF No. 40 at 8. Under that provision, a prisoner "experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" may constitute an extraordinary and compelling reason for release. U.S.S.G. § 1B1.13(b)(1)(B)(iii). Defendant also points to his cooperation with the government as another extraordinary and compelling reason for release and further argues that the increased severity of his sentence due to the pandemic is a "separate and independent basis for compassionate release." ECF Nos. 40 at 5, 49 at 6.

The government argues that the deterioration of Defendant's health is not serious and that he has received medical care at his institution that sufficiently mitigated the effects of his ailments. ECF No. 47 at 8–9. It also argues that because of the advent of vaccines and other measures, COVID-19 does not bear on compassionate release for health reasons. *Id*. at 10–11. The government also contends that increased severity of an inmate's sentence due to COVID-19 lockdown measures has not been recognized as an independent basis for granting compassionate release and that it is merely a factor in certain circumstances. ECF No. 53 at 5–6.

To justify relief based on a serious deterioration in health due to the aging process, the serious deterioration must have actually occurred; it cannot be merely impending. *See United States v. Schmidt,* No. 7:09-CR-167-D, 2022 WL 909404, at *3 (E.D.N.C. Mar. 28, 2022)

(holding that the potential onset of dementia does not constitute a serious deterioration in health). A finding that a defendant's health has seriously deteriorated due to their age must be supported by evidence, not conclusory averments of deterioration in health. *See Mangarella,* 2020 WL 1291835, at *3. While the Sentencing Commission's guidelines do not define "serious deterioration," courts in the Fourth Circuit have found "serious deterioration" based on "serious medical impairments" and in circumstances where BOP could not provide adequate care. *United States v. Beeman,* No. 5:14-CR-51, 2025 WL 2014335, at *3 (W.D. Va. July 17, 2025) (collecting cases); *see also United States v. Downer*, Crim. No. SAG-11-0050, 2025 WL 2494321, at *2 (D. Md. Aug. 28, 2025).

In *United States v. Malone*, an extraordinary and compelling reason for compassionate release based on age was found when Malone was in remission for colon cancer but had a permanent colostomy bag, which required five additional surgeries. 57 F.4th 167, 170 (4th Cir. 2023). "The bag often smelled foul and, on one occasion, blew off from its port, causing feces to spray across the room and himself." *Id*. Additionally, Malone presented a host of other medical problems, including:

> nocturia, the removal of a mass from his left chest wall, Type II Diabetes, a disfunction in his heart ventricle, pulmonary regurgitation, "abnormal Q waves," obstructive sleep apnea, chronic rhinitis, hypertension, "hyperlipidemia," dyslipidemia, other respiratory diseases, dental decay and loss (and the prison's refusal to provide him with molds per his request), tingly legs, burning sensations, and swollen feet.

*Id.*

In *Downer*, the Court found that there was a serious deterioration in Downer's health based on his age when he had "asthma, a right-sided renal mass or cyst, hyperlipidemia, cataracts and other vision problems, hypertension, prostate issues, sickle-cell trait, Vitamin D deficiency, rheumatoid arthritis, systemic sclerosis, edema, and prediabetes, among others." 2025 WL 2494321, at *2. Downer required care from multiple specialists but consistently

waited for appointments months longer than his doctors recommended. *Id*. The Court determined that his conditions, taken together, and the BOP's inability to care for him created the serious deterioration of his health that justified relief. *Id*.

In contrast, courts in the Fourth Circuit have denied compassionate release motions based on age when the defendant's ailments are not serious, are not progressing, or were not actually caused by the defendant's age. *See Mangarella*, 2020 WL 1291835, at *3; *Beeman*, 2025 WL 2014335, at *4; *United States v. Bear*, No. 1:06CR00018, 2024 WL 3549091, at *2 (W.D. Va July 26, 2024) (holding that serious medical conditions alone "do not suffice" to show a serious deterioration in health due to the aging process because "those conditions may be causally unrelated to the aging process"). In *Mangarella*, the defendant presented numerous illnesses, but there was no evidence of progression in the prior four years. 2020 WL 1291835, at *3. In *Beeman*, the defendant's use of a C-PAP machine for sleep apnea, the removal of his left kidney, a stone in his right renal pelvis, a stent being placed in his right kidney, degenerative discs in his spine, and uncovertebral joint arthrosis were insufficient to constitute a serious deterioration. *See* 2025 WL 2014335, at *4. The court based this determination in part on notes from Beeman's provider describing him as "well developed, well nourished, alert and cooperative and appear[ing] to be in no acute distress." *Id.* Also significant was Beeman's continued ability to carry out daily activities. *Id*. Additionally, Beeman's degenerative disc diagnosis was not considered in the court's analysis because it was made substantially more severe when he was attacked by a cellmate, not by the aging process, as required by § 1B1.13(b)(2)(B). *Id*.

The Court finds the instant case to be more like *Malone* and *Downer* than cases like *Mangarella* and *Beeman*. First, Defendant has exhausted administrative remedies, as required by § 3582(c)(1)(A), *see* ECF No. 40–7, and he is over 65 years of age and has served more than ten years of his sentence, satisfying § 1B1.13(b)(2)(A) and (C), *see* ECF Nos. 40-4 at 1;

40-8 at 20. Furthermore, Defendant suffers from a litany of medical conditions, some of which have worsened over time, likely due to aging. *See* ECF No. 40-2. In combination, the Court finds these conditions serious enough to constitute an extraordinary and compelling reason for release. Defendant was diagnosed with stage two chronic kidney disease on April 26, 2022. ECF No. 40-2 at 7. Defendant points out that the lifestyle changes necessary to slow the progression of kidney disease are not possible in prison. Additionally, Defendant's prior pre-diabetic condition progressed to a diabetes diagnosis on October 10, 2023. ECF No. 40-2 at 1. A diabetes diagnosis alone does not constitute a serious deterioration in health based on age, *see Bear*, 2024 WL 3549091, at *1, 4, but it is often considered by courts as part of a serious deterioration in health, s*ee, e.g., Malone*, 57 F.4th at 170. As a result of his diabetes diagnosis, Defendant claims that his vision has deteriorated. ECF No. 49 at 3, 5.

Defendant also identifies tooth loss as a serious deterioration of his health due to age, noting potentially years-long wait times for dentures. ECF Nos. 49 at 5; 55-1. The *Malone* court identified BOP's refusal to provide dental molds as a reason supporting extraordinary and compelling circumstances, when considered in combination with complications the defendant experienced from a serious surgery. 57 F.4th 167 at 170. Although, Defendant has been on the waitlist to receive dentures, ECF No. 55-1, the wait time appears to be extremely long. *See* ECF No. 55-1. Further, Defendant states that BOP has not accommodated his dietary restrictions by providing food that he can both chew with his remaining teeth, and that is safe for him given his diabetes diagnosis. *See* ECF No. 49 at 3; ECF No. 49-1 at 1, 3; ECF No. 55-1; *see also* ECF No. 55-2. As a result, Defendant lost thirty-five pounds. *See* ECF No. 49-1 at 1. The government was granted a surreply and does not dispute Defendant's claims. *See generally* ECF Nos. 52, 53.

In addition, Defendant's medical records reflect that he developed a vitamin D deficiency, an old myocardial infarction, necrosis of pulp, secondary osteoarthritis, trigger finger, proteinuria, and impingement syndrome of shoulder. ECF No. 40-2 at 1–2.

In sum, Defendant has adequately shown that he is "experiencing a serious deterioration in physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(2). In addition, Defendant has adequately supported eligibility for relief under U.S.S.G. § 1B1.13(b)(1)(B)(iii) because, as explained above, he has suffered from medical conditions that "substantially diminish[] [his] ability . . . to provide self-care within the environment of a correctional facility, and from which he . . . is not expected to recover."

Compassionate release is also supported by relevant factors set forth in 18 U.S.C. § 3553(a). The § 3553(a) factors include, among others, "the nature and circumstances of the offense and the history and characteristics of the defendant;" the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes of the defendant; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a). To be sure, Defendant's participation in a conspiracy to commit murder in aid of racketeering activity, which included his personal participation in the act of murder, constitutes an extremely serious offense that calls for a lengthy term of incarceration. A long prison term is necessary to ensure public safety and adequate deterrence, to provide just punishment, and to impart respect for the law, as Judge Quarles noted when imposing the sentence in this case. *See* ECF No. 40-8 at 19–21. However, there can be no doubt that Defendant has served a very long prison term, and, at his advanced age and in his present medical condition, the Court does not find that he continues to present an elevated risk to public safety.



## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release shall be granted. A separate Order will follow.

July 21, 2026
Date

Matthew J. Maddox
United States District Judge